CLERK US DISTRICT COURT
NORTHERN DIST. OF TX
FILED

**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF TEXAS**
**ABILENE DIVISION**

2016 OCT -6  PM 3: 01

DEPUTY CLERK

| | | |
|---|---|---|
| MICHAEL ADKINS, et al., | § | |
| Plaintiffs, | § | |
| | § | |
| v. | § | No. 1:15-CV-0169-BL |
| | § | |
| THOMAS JAMES VILSACK, | § | |
| Secretary, The United States Department | § | |
| of Agriculture, et al., | § | |
| Defendants. | § | |

## REPORT AND RECOMMENDATION

Pursuant to 7 U.S.C. § 6999, 7 C.F.R. § 11.13, and Chapter 7 of Title 5 of the United States

Code, Plaintiffs seek judicial review of a final decision of the National Appeals Division ("NAD"),

a division of the United States Department of Agriculture ("USDA"). *See* Compl. (doc. 1) ¶ 23.

Defendants have filed an answer, Defs.' Answer (doc. 18), and the administrative record (doc. 24).

The parties have briefed the issues. *See* Docs. 26-29.  The United States District Judge referred the

case to the undersigned pursuant to 28 U.S.C. § 636 and the parties have not consented to proceed

before a United States Magistrate Judge.  After considering the arguments, applicable law, and the

administrative record, the undersigned recommends that the Court reverse the final decision of NAD

for the reasons stated herein.

## I. BACKGROUND

The factual background of this case is not in dispute.  Plaintiffs are farmers who produce

winter wheat.  They seek judicial review of an adverse decision of the Risk Management Agency

("RMA"), which was affirmed by NAD.  The issue is whether the agency properly applied and

interpreted the Federal Crop Insurance Act ("FCIA"), 7 U.S.C. §§ 1501-1524, as amended through

the Agricultural Act of 2014 ("Farm Bill"), Pub. L. No. 113-79, 128 Stat. 956, which was signed into

law on February 7, 2014. At the center of the parties' dispute is the amendment to § 1508(g) through

section 11009 of the Farm Bill, commonly known as the Actual Production History ("APH") Yield

Exclusion. Before setting out the procedural history, a brief overview of the FCIA is warranted.

## A. Federal Crop Insurance Act

The Federal Crop Insurance Act is intended "to promote the national welfare by improving

the economic stability of agriculture through a sound system of crop insurance and providing the

means for the research and experience helpful in devising and establishing such insurance." 7 U.S.C.

§ 1502(a) (2010).[1] As used in the FCIA, "[t]he term 'Corporation' means the Federal Crop Insurance

Corporation [("FCIC")] established under section 1503 of this title." *Id.* § 1502(b)(5) (Supp. 2016)

(renumbered as (5) in accordance with Pub. L. 113-79, sec. 11016(a)). In 7 U.S.C. § 1506, Congress

"outlines the general powers of the FCIC." *Tex. Peanut Farmers v. United States*, 409 F.3d 1370,

1374 (Fed. Cir. 2005); *accord* 7 U.S.C. § 1506(a)-(r) (2010 & Supp. 2016). One such listed power

relates to "Actuarial soundness," and requires the FCIC to "take such actions as are necessary to

improve the actuarial soundness of Federal multiperil crop insurance coverage . . .." 7 U.S.C. §

1506(n) (2010).

When Congress originally passed the FCIA "in 1938, near the end of the dust bowl catast-

rophe, private insurance companies 'apparently deemed all-risk crop insurance too great a commer-

cial hazard.'" *Stewart v. Fed. Crop Ins. Corp.*, No. 4:09-CV-101, 2010 WL 3341863, at *1 (E.D.

Tenn. Aug. 25, 2010) (quoting *FCIC v. Merrill*, 332 U.S. 380, 383 n.1 (1947)). However, "as part

---

[1]The FCIA has undergone numerous amendments over the years. The 2010 version contains the statutory text prior to the 2014 amendments. The 2016 supplement contains text for the 2014 amendments as well as 2015 amendments that are not relevant to this recommendation. When this recommendation mentions "prior version," it refers to the version in effect on February 6, 2014, and when it mentions "amended version," it refers to the version in place from February 7, 2014, through the 2015 amendments.

of a general trend privatizing governmental functions," Congress amended the FCIA in 1980 "to require the FCIC, 'to the maximum extent practicable,' to reinsure policies issued by private insurance companies rather than to issue direct policies." *Id.* (quoting Federal Crop Insurance Act of 1980, Pub. L. 96-365, 94 Stat. 1312 (codified in relevant part at 7 U.S.C. § 1508(a)(1), (k)(1))). In its current form, "[t]he FCIA empowers the FCIC to provide crop insurance directly to farmers or to provide reinsurance to private approved insurance providers who sell federal crop insurance policies." *Clanton v. U.S. ex rel. U.S. Dep't of Agric., Risk Mgmt. Agency*, No. 1:13-CV-01063, 2015 WL 461648, at *1 (W.D. Ark. Feb. 4, 2015) (citing 7 U.S.C. § 1508(a)(1) & (k)).

Section 1508 of Title 7 of the United States Code governs crop insurance. Subsection (g) specifically governs yield determinations. The 2014 Farm Bill did not alter the basic structure of this subsection. Both the prior and amended versions first set out a general provision: "Subject to paragraph (2), the Corporation shall establish crop insurance underwriting rules that ensure that yield coverage, as specified in this subsection, is provided to eligible producers obtaining catastrophic risk protection under subsection (b) of this section or additional coverage under subsection (c) of this section." 7 U.S.C. § 1508(g)(1) (2010 & Supp. 2016) (supplement shows no amendment to (g)(1)). Including that first paragraph, both versions have provisions covering the following topics: (1) general provision, (2) yield coverage plans, (3) transitional yields for producers of feed or forage, (4) adjustments in actual production to establish insurable yields, and (5) adjustments to reflect increased yields from successful pest control efforts. *Id.* § 1508(g)(1)-(5) (both versions showing same structure).

Paragraph (4) of subsection (g) is at the heart of the parties' dispute. The Farm Bill amended that paragraph by (1) re-designating subparagraph (C) to (D); (2) adding "or (C)" after "(B)" to the

3

re-designated (D); and (3) adding a new subparagraph (C) to govern elections to exclude certain history. *See* Pub. L. No. 113-79, sec. 11009, § 508(g), 128 Stat. 956, 957. Amended subparagraph (D) provides that, when a producer "makes an election under subparagraph (B) or (C), the Corporation shall adjust the premium to reflect the risk associated with the adjustment made in the actual production history of the producer." 7 U.S.C. § 1508(g)(4)(D) (Supp. 2016). Notably, the Farm Bill did not amend subparagraph (A), titled "Application," which provides: "This paragraph shall apply whenever the Corporation uses the actual production records of the producer to establish the producer's actual production history for an agricultural commodity for any of the 2001 and subsequent crop years." *Id.* § 1508(g)(4)(A) (2010 & Supp. 2016) (supplement shows no amendment to (g)(4)(A)).[2] The primary source of the parties' disagreement stems from this pre-existing application subparagraph; the absence of any new application provision for § 1508(g)(4), and new statutory provisions added through sections 11003, 11007, 11010, 11015, and 11017 of the Farm Bill.

Section 11003 amended 7 U.S.C. § 1508(c) and (e)(2) while also adding the following note for 7 U.S.C. § 1508: "(d) APPLICATION DATE.—The Federal Crop Insurance Corporation shall begin to provide additional coverage based on an individual yield and loss basis, supplemented with coverage based on an area yield and loss basis, as described in the amendments made by this section, not later than for the 2015 crop year." *See* Pub. L. No. 113-79, sec. 11003, § 508(c), (e)(2), 128 Stat. 956, 956. As the statutory notes clarify, "the amendments made by this section" refer to amendments to "pars. (3) and (4) of subsec. (c) and enacting subsec. (e)(2)(H) of [§ 1508]." *See* 7 U.S.C. § 1508 (Supp. 2016) (statutory notes).

---

[2] For ease of reference, this recommendation will sometimes use "whenever conditions" to refer to the whenever clause of 7 U.S.C. § 1508(g)(4)(A).

Similarly, section 11007 added a subparagraph (D) to the end of 7 U.S.C. § 1508(e)(5): "Beginning with the 2015 crop year, the Corporation shall make available separate enterprise units for irrigated and nonirrigated acreage of crops in counties." *See* Pub. L. No. 113-79, sec. 11007, § 508(e)(5), 128 Stat. 956, 956-57.

Section 11010 made several amendments to 7 U.S.C. § 1508(h), including adding paragraph (3)(C) to specify review and approval priorities so that relevant policies are "available . . . in time for the 2015 crop year" for peanut and rice producers and, "beginning for the 2015 crop year, allow producers that purchase policies in accordance with [7 U.S.C. § 1508(e)(5)(A)] to separate enterprise units by risk rating for acreage crops in counties. *See* Pub. L. No. 113-79, sec. 11010, § 508(h), 128 Stat. 956, 959.

Section 11015 added the following paragraph to the end of § 1508:  "(p) COVERAGE LEVELS BY PRACTICE.—Beginning with the 2015 crop year, a producer that produces an agricultural commodity on both dry land and irrigated land may elect a different coverage level for each production practice." *See* Pub. L. No. 113-79, sec. 11015, § 508, 128 Stat. 956, 963.

Finally, section 11017 added 7 U.S.C. § 1508b to address stacked income protection plans for producers of upland cotton. *See* Pub. L. No. 113-79, sec. 11017, § 508b, 128 Stat. 956, 964-66. The amendment includes an availability provision that states: "Beginning not later than the 2015 crop of upland cotton, the Corporation shall make available to producers of upland cotton an additional policy . . . ." *Id.* at 964.

## B. **Procedural History**

The Agricultural Act of 2014 was signed into law on February 7, 2014.  Through an interim rule published in the Federal Register on July 1, 2014, the agency amended 7 C.F.R. § 457.8 to

specify when insureds may elect to exclude crop yields pursuant to the APH Yield Exclusion:

> If provided in the actuarial documents, you may elect to exclude any actual yield for any crop year when FCIC determines for a county, or its contiguous counties, the per planted acre yield was at least 50 percent below the simple average of the per acre planted yield for the crop in the county for the previous 10 consecutive crop years.

R. 634-35; *see also*, 7 C.F.R. § 457.8 (Basic Provisions Section 5).

On September 30, 2014, the sales closing date to purchase crop insurance for 2015 winter wheat expired. On or about that date, Plaintiffs elected to exclude crop yields under the APH Yield Exclusion. At that time, actuarial documents did not contain coverage levels for any 2015 crop. The next day, RMA began drafting guidance for Approved Insurance Providers ("AIPs") following requests about APH Yield Exclusions. On October 21, 2014, the Secretary of Agriculture announced that the APH Yield Exclusion would be available for crops that had crop insurance contract change dates on or after November 30, 2014.

Through a memorandum dated October 31, 2014, RMA provided guidance to AIPs with respect to their responses to requests for APH Yield Exclusions that RMA had not yet authorized for the 2015 crop year. R. 8, 599. That memorandum directed AIPs to cite to the amended Basics Provisions Section 5 (within 7 C.F.R. § 457.8) and inform insureds that "until RMA's actuarial documents reflect that such an election is available," the AIP would be "unable to accommodate" the requested exclusion. *Id.*

Plaintiffs challenged that written directive as an adverse decision appealable to NAD. R. 44-45. On March 13, 2015, a NAD Administrative Judge dismissed the appeal for lack of jurisdiction because she found the memorandum was not an adverse decision and involved a matter of general applicability. *See* R. 146-56 (Appeal Determination).

6

Plaintiffs requested Director review of the Appeal Determination. R. 166-93. On August 5, 2015, the NAD Director reversed the jurisdictional finding, but upheld "RMA's adverse decision on grounds that it is consistent with applicable laws and regulations, and therefore it is not erroneous." R. 237. The Director addressed the key issue as to "whether RMA acted in accordance with the law when it exercised discretion to determine the appropriate time to implement the APH Yield Exclusion." R. 231. Applying *Chevron U.S.A. Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837 (1984), the Director considered whether subparagraphs (A) and (C) of 7 U.S.C. § 1508(g)(4) were silent or ambiguous with respect to requiring immediate application of the APH Yield Exclusion to the 2015 crop year. R. 231-36. The Director concluded that, given the amount of work needed for implementing the provision, it was not unreasonable for RMA to decline to implement § 1508(g)(4)(C) in time for Plaintiffs to utilize it for their 2015 winter wheat. R. 232, 236.

Plaintiffs commenced this action in September 2015, *see* Compl., and filed their brief in March 2016, *see* Pls.' Br. (doc. 26). They characterize the issue in this case as a "simple" legal question – "when Congress amends a statutory provision, which on its face is already effective, applicable and available to its intended beneficiaries, can an administrative agency refuse to provide that statutory benefit?" Pls.' Br. at 1. They seek judicial review of "the NAD Director's legal determination that the APH Yield Exclusion was not immediately available to Plaintiffs upon the passage of the Farm Bill on February 7, 2014, but was subject to RMA's discretion as to the timeline of implementation." *Id.* at 12. They argue that the Court's review of this legal question is *de novo* and that the Director improperly determined that 7 U.S.C. § 1508(g)(4)(A) is ambiguous under the *Chevron* test. *Id.* at 12-19. They contend that RMA and the Director erred in refusing to provide

7

them the statutory benefit of § 1508(g)(4)(C) and that the refusal is not in accordance with law. *Id.* at 19.

Defendants filed a responsive brief in April 2016, *see* Defs.' Resp. (doc. 27), with an appendix (doc. 28) containing a portion of the agency record missing from the previously submitted administrative record. They argue that the Director's decision is in accordance with law because section 11009 of the Farm Bill does not mandate implementation of that provision for the 2015 crop year. Defs.' Resp. at 11-27.

In reply, Plaintiffs' reiterate that the crux of this case is simple: (1) Congress outlined a methodology in 7 U.S.C. § 1508(g)(4)(C) for calculating a producer's APH for crop insurance purposes; (2) this methodology became effective upon being signed into law on February 7, 2014; (3) the same statute makes the methodology applicable whenever the FCIC uses actual production records to establish the APH for crop years 2001 and thereafter; (4) the FCIC used such records to establish their APH for 2015; and (5) in light of those things Plaintiffs have the right to have their APH for their 2015 winter wheat calculated with that methodology. Reply at 1-2. When Plaintiffs filed their reply brief (doc. 29) this appeal became ripe.

## II. LEGAL STANDARD

Persons adversely affected by a decision of an agency within the USDA may appeal to the National Appeals Division. *See* 7 U.S.C. § 6996. An adverse NAD decision may be appealed to the NAD Director. *See id.* § 6998. Pursuant to 7 U.S.C. § 6999 and 7 C.F.R. § 11.13(a), the United States District Courts may review and enforce final determinations of NAD in accordance with chapter 7 of title 5 of the United States Code. Judicial review "is limited to the agency record." *Reeves v. Klurfield*, No. 5:03-CV-143-C, 2004 WL 691212, at *4 (N.D. Tex. Mar. 31, 2004) (citing

*Camp v. Pitts*, 411 U.S. 138, 142 (1973); *Texas-Capital Contractors v. Abdnor*, 933 F.2d 261, 264 (5th Cir. 1990)).

Under 5 U.S.C. § 706, "the reviewing court shall decide all relevant questions of law, interpret constitutional and statutory provisions, and determine the meaning or applicability of the terms of an agency action." Among other things, reviewing courts shall "hold unlawful and set aside agency action, findings, and conclusions found to be . . . arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A). "The arbitrary and capricious standard is 'highly deferential.'" *Knapp v. U.S. Dep't of Agric.*, 796 F.3d 445, 453 (5th Cir. 2015) (quoting *Pension Benefit Guar. Corp. v. Wilson N. Jones Mem'l Hosp.*, 374 F.3d 362, 366 (5th Cir. 2004)). "A decision is arbitrary or capricious only when it is so implausible that it could not be ascribed to a difference in view or the product of agency expertise." *Wilson v. U.S. Dep't of Agric.*, 991 F.2d 1211, 1215 (5th Cir. 1993) (citation and internal quotation marks omitted). The decision of the agency "need only have a rational basis, and it does not have to be a decision which the court would have made." *Id.* The party seeking judicial review has the burden to "show that the agency action was arbitrary and capricious." *Reeves*, 2004 WL 691212, at *4 (citing *Ward v. Campbell*, 610 F.2d 231, 235 (5th Cir. 1980)).

Courts review "legal conclusions de novo, but with the appropriate level of deference" to the Division's interpretations of the applicable statute and regulations. *Knapp*, 796 F.3d at 454. In general, "an agency's interpretation of its own ambiguous regulation" is entitled to deference under *Auer v. Robbins*, 519 U.S. 452 (1997). *Christopher v. SmithKline Beecham Corp.*, 132 S. Ct. 2156, 2166 (2012). Such deference, however, is unwarranted "when the agency's interpretation is plainly erroneous or inconsistent with the regulation," or "if there is reason to suspect that the agency's inter-

pretation does not reflect the agency's fair and considered judgment on the matter in question." *Id.* (citations and internal quotation marks omitted).

With respect to deference given to an agency's statutory interpretation, *United States v. Mead Corporation*, 533 U.S. 218 (2001) provides guidance through a two-step analysis. *Knapp*, 796 F.3d at 454. In *Mead*, the Supreme Court considered "the limits of *Chevron* deference owed to administrative practice in applying a statute." 533 U.S. at 226. It held "that administrative implementation of a particular statutory provision qualifies for *Chevron* deference when it appears that Congress delegated authority to the agency generally to make rules carrying the force of law, and that the agency interpretation claiming deference was promulgated in the exercise of that authority." *Id.* at 226-27.

However, deference under *Chevron* is simply unnecessary when "Congress has directly spoken to the precise question at issue" because "[i]f the intent of Congress is clear, that is the end of the matter; for the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress." *Chevron U.S.A. Inc. v. Nat. Res. Def. Council, Inc.*, 467 U.S. 837, 842-43 (1984). Deference under *Chevron* enters the equation once "the court determines Congress has not directly addressed the precise question at issue." *Id.* at 843. When "the statute is silent or ambiguous with respect to the specific issue, the question for the court is whether the agency's answer is based on a permissible construction of the statute." *Id.* In answering that question, the courts defer to reasonable administrative interpretations and accord "considerable weight . . . to an executive department's construction of a statutory scheme it is entrusted to administer." *Id.* at 844-45. "If a statute is ambiguous, and if the implementing agency's construction is reasonable, *Chevron* requires a federal court to accept the agency's construction of the statute, even if the agency's reading differs

10

from what the court believes is the best statutory interpretation." *Nat'l Cable & Telecomms. Ass'n v. Brand X Internet Servs.*, 545 U.S. 967, 980 (2005). In other words, when "an agency's decision qualifies for *Chevron* deference," courts "accept the agency's reasonable construction of an ambiguous statute that the agency is charged with administering." *Knapp*, 796 F.3d at 455.

Furthermore, courts treat Congressional silence differently in some contexts. For instance, in 1991, the Supreme Court reaffirmed a long-standing legal principle that, "absent a clear direction by Congress to the contrary, a law takes effect on the date of its enactment." *Gozlon-Peretz v. United States*, 498 U.S. 395, 404 (1991). In light of that binding precedent, silence by Congress speaks volumes in ascertaining when a statute becomes effective.

## III. ANALYSIS

At issue in this case is NAD's legal determination that the APH Yield Exclusion set out in 7 U.S.C. § 1508(g)(4)(C) was not immediately available to Plaintiffs upon the passage of the Farm Bill on February 7, 2014, but was instead subject to RMA's discretion as to the timing of implementation of that amendment. The issue is one of statutory interpretation. The case presents no issue of interpretation of any regulation.

The Court's first task is to determine whether the statute is silent or ambiguous as to the issue before the Court. Pointing to the applicability provision, § 1508(g)(4)(A), Plaintiffs contend that there can be no reasonable dispute that Congress spoke directly to the issue of the applicability of the APH Yield Exclusion for the 2015 crop year. Pls.' Br. at 13. Defendants counter that Congress did not speak about implementing section 11009, which amended § 1508(g)(4)(C). Defs.' Resp. at 12. As is immediately obvious, the two sides differ in how they frame the issue. For Plaintiffs, the issue is one of applicability, but Defendants view it as one of implementation. Is this a false dis-

tinction as Plaintiffs propose in reply, *see* Reply at 6, or are they different issues as Defendants contend?

While not citing to *Gozlon-Peretz*, Plaintiffs essentially invoke its legal principle. At the outset it appears that applicability and implementation might be synonymous in this context. It seems odd indeed that paragraph (4) of § 1508(g) would apply if it is not in effect or has not been implemented. Nevertheless, the Court need not rely merely on initial impressions or appearances to decide that issue. It should instead dig deeper into the statutory language and the statute's context as a whole to make the ultimate determination.

Courts consider statutory language to be ambiguous when it is "susceptible to more than one reasonable interpretation or more than one accepted meaning." *United States v. Kaluza*, 780 F.3d 647, 658-59 (5th Cir. 2015). Referring to Black's Law Dictionary (8th Ed. 2004), Plaintiffs define apply as "[t]o put to use with a particular subject matter." Reply at 6. Based on this definition, Plaintiffs argue that it is clear that § 1508(g)(4)(A) is neither passive nor abstract, but is instead an active direction as to how an agency must calculate a producer's APH. *Id.* They further argue that the combined effect of subparagraphs (A) and (C) of § 1508(g)(4) creates a statutory benefit for them for the 2015 crop year. *Id.*

"Whether a statutory term is unambiguous, however, does not turn solely on dictionary definitions of its component words. Rather, "[t]he plainness or ambiguity of statutory language is determined [not only] by reference to the language itself, [but as well by] the specific context in which that language is used, and the broader context of the statute as a whole." *Yates v. United States*, 135 S. Ct. 1074, 1081-82 (2015) (quoting *Robinson v. Shell Oil Co.*, 519 U.S. 337, 341 (1997)). Defendants argue that the context of the statute as a whole makes it ambiguous. That con-

text is important "when determining whether the language of a statute is clear and unambiguous." *Ali v. Lynch*, 814 F.3d 306, 311 (5th Cir. 2016).

The Court should find that Congress directly spoke to the issue of the applicability of § 1508(g)(4). Defendants concede that when Congress enacted the Agricultural Protection Act of 2000, which included § 508(g)(4)(A), paragraph (4) "became applicable to the 2001 and subsequent crop years." Defs.' Resp. at 13-14. They further concede: "Under the plain language section 508(g)(4)(A) of the FCIA, the APH Yield Exclusion must be applicable for a crop year subsequent to 2001." *Id.* at 14. In addition to those concessions, the statutory language of § 1508(g)(4)(A) and the context of the statute as a whole unambiguously and clearly makes § 1508(g)(4) applicable for crop years commencing in 2001. The "whenever clause" of subparagraph (A) limits the applicability to a particular set of circumstances, but the parties agree as to the presence of those circumstances in this case.

The question thus becomes whether the actual issue is implementation and whether that issue differs from applicability of paragraph (4) as Defendants urge. If applicability encompasses implementation then Congress has directly spoken to that issue and the Court should find the statute unambiguous and clear. However, if implementation differs materially from applicability, then the applicability provision of itself does not resolve the issue before the Court. To determine whether the terms "application" and "apply" as used within § 1508(g)(4)(A) encompasses implementation requires the Court to consider the chosen language as well as the context of the statute as a whole.

Defendants argue that section 11009 has no express language that mandates implementation for the 2015 crop year, whereas sections 11003, 11007, 11010, 11017, and 11017 "expressly state they are to be implemented for the 2015 crop year." Defs.' Resp. at 3. The argument lacks persua-

siveness for a number of reasons. First, none of these sections expressly use the term implement. Section 11003 added a note that refers to "APPLICATION DATE." *See* Pub. L. No. 113-79, sec. 11003, § 508(c), (e)(2), 128 Stat. 956, 956. So its terminology is analogous to the terminology within § 1508(g)(4)(A), and Defendants' interpretation of section 11003 appears to support finding § 1508(g)(4) similarly requires implementation for the 2015 crop year. Sections 11007, 11010, and 11017 speak in terms of availability beginning with the 2015 crop year. *See* Pub. L. No. 113-79, secs. 11007, 11010, 11017, §§ 508(e)(5), 508(h), 508b, 128 Stat. 956, 956-57, 959, 964-66. Section 11015 does not mention availability but instead simply states "Beginning with the 2015 crop year . . . ." *See* Pub. L. No. 113-79, sec. 11015, § 508, 128 Stat. 956, 963. Second, Defendants appear to place too much emphasis on these specific provisions of the Farm Bill instead of focusing on the amended statute as a whole, while also taking into consideration the pre-amended version of the statute to the extent it provides proper context.

As already discussed, moreover, "apply" means "[t]o put to use with a particular subject matter." Black's Law Dictionary 120 (10th Ed. 2014). With that definition, § 1508(g)(4)(A) thus means that paragraph (4) of § 1508(g) shall be put to use whenever the whenever conditions are satisfied for the 2001 and subsequent crop years, including the 2015 crop year at issue in this action. On its face, paragraph (4) provides no basis to delay such use except when the whenever conditions are not satisfied. Defendants, nevertheless, urge the Court to find that the statute is not self-executing and provides discretion to not immediately implement § 1508(g)(4)(C). Defs.' Resp. at 12-18. They rely on the general provision of § 1508(g)(1) to argue that the statute contemplates a delay for establishing underwriting rules. *Id.* at 15. Similarly, they rely on § 1508(g)(4)(D) to support delayed implementation so that RMA could establish premiums to cover additional risks

14

associated with use of the APH Yield Exclusion. *Id.* Additionally, they contend that § 1508(a)(1) requires sufficient actuarial data to be available before the FCIC may offer insurance coverage and that § 1506(n) requires the FCIC to operate the crop insurance program in an actuarially sound manner. *Id.* at 20-21.

In this context, to "implement" means "to give practical effect to and ensure of actual fulfillment by concrete measures." Webster's Third New Int'l Dictionary 1134 (1993). In addition, "self-executing" means "effective immediately without the need of any type of implementing action." Black's Law Dictionary 1566 (10th Ed. 2014). As mentioned previously, "absent a clear direction by Congress to the contrary, a law takes effect on the date of its enactment." *Gozlon-Peretz v. United States*, 498 U.S. 395, 404 (1991). Given this binding precedent, Congressional silence in the context of statutory enactment makes the Congressional act self-executing. Congress need not explicitly make a statute self-executing – its silence is sufficient to do so. On the other hand, Congress must give clear direction when it wants to make a statute not self-executing and effective on the date it enacts the law. When Congress wants to delay a statutory provision so that an agency may implement governing regulations or to otherwise implement the statute, it must do so with clear direction.

Here, Congress provides specific timing guidance or direction within the statutory amendments resulting from sections 11003, 11007, 11010, 11015, and 11017 of the Farm Bill but provides no new direction regarding the amendment of § 1508(g). These differences do not evince an intent to permit delayed implementation of § 1508(g) as urged by Defendants. They instead clearly and specifically address the individual amended provisions. As previously discussed, the unamended § 1508(g)(4)(A) already contained a provision that would make paragraph (4) entirely applicable to

the 2015 crop year.  No further Congressional direction was necessary to effect an intent that paragraph (4)(C) be implemented for that crop year.  Given the applicability provision already within § 1508(g)(4)(A) it is hardly surprising that Congress did not include express applicability language within section 11009, i.e., the amendment to § 1508(g)(4)(C).  The Farm Bill was enacted on February 7, 2014, and was first introduced by Congress in 2013.  In accordance with established precedent of the United States Supreme Court, *Gozlon-Peretz*, the amendments became effective on the date of enactment unless Congress provides clear direction to the contrary.  Congress did not provide such clear direction for § 1508(g).

That Congress included specific direction regarding the timing of other amended provisions provides no basis to infer an intent to permit delayed implementation of § 1508(g).  When "Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion." *Russello v. United States*, 464 U.S. 16, 23 (1983).  In light of the February 2014 enactment date of the Farm Bill and resulting amendments and the already existing applicability provision of § 1508(g), Congress had ample reason to intentionally omit any implementation language from section 11009 that it included in the other provisions of the Farm Bill.

If Congress wanted to delay implementation of the amendment to § 1508(g), it could have clearly done so in a manner similar to language used in amendments of the Federal Insecticide, Fungicide, and Rodenticide Act ("FIFRA").  *See Amchem Prod., Inc. v. GAF Corp.*, 594 F.2d 470, 473 (5th Cir.) (noting that amendments to FIFRA "shall take effect at the close of the date of the enactment of this Act, provided if regulations are necessary for the implementation of any provision that becomes effective on the date of enactment, such regulation shall be promulgated and shall

16

become effective within 90 days from the date of enactment of this Act"), *modified on other grounds*, 602 F.2d 724 (5th Cir. 1979). Congress, however, did not use that or similar language. On its face, § 1508(g) does not defer the effective date of the whole subsection, any subparagraph, or give any agency discretion to delay implementation of the provision.

As Defendants point out, § 1508(g)(1) directs the Corporation to establish insurance underwriting rules and (g)(4)(D) provides for adjustments to premiums. In addition, the Federal Crop Insurance Act requires (1) actuarial soundness in the operation of the crop insurance program and (2) sufficient available actuarial data before the FCIC may offer insurance coverage. *See* 7 U.S.C. §§ 1506(n), 1508(a)(1) (2010). None of these provisions, however, make § 1508(g)(4)(A) ambiguous or provide any definite statement that implementation should be delayed. When Congress amended FCIA in 2000, it made the amendments generally effective on the date of enactment, June 20, 2000, but specifically provided for later dates for some provisions: (1) 2001 fiscal year or October 1, 2000; (2) 2001 crop year; and (3) 2001 reinsurance year. *See* Agricultural Risk Protection Act of 2000, Pub. L. No. 106-224, sec. 171, 114 Stat. 358 (note to 7 U.S.C. § 1501). It also stated: "Not later than 120 days after the date of the enactment of this Act, the Secretary of Agriculture shall promulgate regulations to carry out this Act and the amendments made by this Act." Pub. L. No. 106-224, sec. 172 (note to 7 U.S.C. § 1501). This is the type of clear direction that is missing with respect to § 1508(g)(4).

Defendants argue that giving immediate effect to § 1508(g)(4) renders §§ 1506(n) and 1508(a)(1) meaningless. The Court disagrees. Giving immediate effect to the amended § 1508(g)(4) does not deprive the FCIC of authority to offer insurance in accordance with § 1508(a)(1). Regardless of subsection (g)(4), the FCIC retains authority to offer insurance when it determines that there

17

is sufficient actuarial data.  Similarly, giving immediate effect to subsection (g)(4) does not alter the general power of the FCIC under § 1506(n) to operate the crop insurance program with actuarial soundness.

The administrative record reflects that the agency had much to do to prepare for the 2015 crop year, but that does not permit the Court to re-write the statute to permit the delay sought by the agency in this case.  It is the role of Congress, not the courts, to write and enact statutory provisions. The Court's role is one of interpretation and enforcement, and in this instance, the Court should find legal error in the agency's decision with respect to the APH Yield Exclusion set out in § 1508(g)(4)(C).  The decision to delay implementation of that statutory provision without clear Congressional direction constitutes a legal error not made in accordance with law within the meaning of 5 U.S.C. § 706(2)(A). The Supreme Court has spoken clearly on this topic.  The decision cannot be ascribed to a difference in view because the statute lacks clear direction from Congress that the statute is not effective on the date of its enactment.  The agency viewed the Congressional silence as creating ambiguity whereas binding precedent characterizes silence with respect to enactment date as exhibiting clarity.  Furthermore, determining when a statute becomes effective is not a product of any agency expertise.  Consequently, the decision to delay implementation is arbitrary or capricious.  The legal error warrants reversal of the decision and remand for proper application of the APH Yield Exclusion.

## IV.  CONCLUSION

For the reasons set forth in this Report and Recommendation, the Court should find the final decision of the National Appeals Division to be arbitrary, capricious, or otherwise not in accordance with law and set aside that decision as unlawful in accordance with 5 U.S.C. § 706(2)(A).  The

undersigned thus **RECOMMENDS** that the district court **REVERSE** the decision to delay implementation of the APH Yield Exclusion for the 2015 crop year for winter wheat. This matter should be **REMANDED** for further proceedings consistent with this recommendation. Because the parties have not consented to proceed before a United States Magistrate Judge, the undersigned directs the Clerk of Court to **REASSIGN** this case to Senior District Judge Sam R. Cummings in accordance with Second Amended Special Order No. 3-301 (doc. 30).

A copy of this Report and Recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of this Report and Recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's report and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the District Court, except upon grounds of plain error. *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

**SO ORDERED this _6th_ day of October, 2016.**

E. SCOTT FROST
**UNITED STATES MAGISTRATE JUDGE**